second case in the morning call Henry the Marriage of Mason on behalf of the Appalachians, Mrs. Mara Marker on behalf of the Appalachians, Mr. Michael Steadman. All right, good morning. I think you've heard my announcement before. We were running late because of a little snafu, and we apologize, but Ms. Marker, you may proceed. Good morning. My name is Tamara Marshall, and I appear on behalf of Walter Mason, the Appalachian. The issue before the court is whether the trial court erred in entering a modified qualified domestic relations order. The parties were married in August of 2008. Three quadros were entered in November of 2004. Only one quadro is at issue here, the quadro from GATX, which was the current employer of Walter at the time of the divorce. Walter's asking this court to find that the language of the judgment was unambiguous and that the modified quadro entered by the trial court conflicts with the terms of the judgment. It was the same language as in Richardson though, wasn't it, basically? The language was the same, but I would distinguish this from Richardson for several reasons, the most important of which is the factual circumstances of the parties. In Richardson, the husband's pension had a substantial portion that was accrued before the marriage and also a substantial portion that was accrued after the marriage. So when they said 50% as of the date of divorce, there was a divided pie, so to speak, whereas in this case, the entire portion of Walter's benefits as of the date of divorce were known, in effect. So we were saying we're splitting the whole pie, 50% down the middle, as opposed to in Richardson having to determine which part was marital and then splitting that in half. And I think that's where the main difference is. Are you saying that in Richardson, the trial court was – or the appellate court was correct in saying that the marital settlement agreement or the judgment did not apportion the benefit? I mean, it gave a percentage, but it didn't apportion the benefit. But in this case, the judgment did apportion the benefit? In the Richards case, too, it says as it has accrued, too. It said as it has accrued, yes. But like I said, in this case, 100% of Walter's benefit as of the date of divorce was marital. So there wasn't that question of as it had accrued, okay, but which portion of his benefit was marital. But what I'm getting at is – I should have been clearer. What I was talking about with my question is the apportionment method that we're going to use to apportion this. Okay, I mean, we have a marital portion of a benefit. But then the case law talks about, well, that may be established that it's during this time period as the marital – Richardson said accrued during the marriage, so that was the marital portion, but there was not an apportionment method. That's what they said in Richardson. Do you agree with that? Well, again, I think that it's not necessary in this case because we're just taking 50% of what was there. So we don't need to get to that point. Right. Because the language was clear as your position in this case that it was as of the time of divorce and it stopped there. Correct. I mean, the exact language was wife shall have 50% of husband's defined benefit, pension plan benefit accrued during the marriage. I think that under this court's own ruling in Gassner v. Rayner Manufacturing, you're bound by the four corners test. In this case, I think when you look to the four corners of the document, sort of the operative words in that are accrued during the marriage. Accrued is a fairly simple, straightforward verb, synonyms being accumulated, built up, amassed, and it's modified by the adverbial phrase during the marriage. So this adverbial phrase answers the question when? During the marriage. So you don't think the language was ambiguous enough for Judge Zopp to go ahead and readdress or reexamine his ruling? Right. I think the language on its face in the four corners of the document is very simple. And I think to infer that somehow a coverture fraction was implicated in this language takes a lot of information that's not in the four corners of the document. You either have to go to a case law, which inevitably would involve some sort of expert opinion. And I think that in this case, we had a marital settlement agreement where the parties entered into negotiations. And this was part of it. And this was part of it. And they could have very well put in there, and it was drafted by the appellee's attorney, I would note, so it should be construed against her, but they could have very well put a hunt formula in there. If my math is correct, that case had been around for at least 20 years. It wasn't referenced in the case. They could have referenced the hunt formula, put an actual coverture fraction in there. There's simply no language that expands Roberta's entitlement beyond what was established and frozen at that date. Is there a disadvantage to or an advantage or a disadvantage to taking the marital settlement agreement as it accrued during the marriage versus taking the marital settlement or in the marital settlement agreement taking the quadro over the period of the husband's working life? I'm sorry, I'm not sure I understand. Are there benefits or detriments to taking the quadro over the whole period of the husband's life as opposed to just during the marriage? I guess I'm asking this as an attorney who's negotiating a marital settlement agreement. Sure. I mean, I think the point of including coverture fraction is that you take into account that the retirement funds may never be paid for some reason. You take into account the growth over time. You know, when was the money put in the pension, you know, sooner or later depending on how the benefits are calculated under that particular plan. You know, is it more or less valuable? But I think the fact that I have to stand here and go on and on about this is evidence that it shouldn't be inferred in the simple language that was in this particular judgment. I guess my question is when you're negotiating a marital settlement agreement and you say, okay, wife or husband, we're going to take the – in exchange for taking the quadro during the time of the marriage, in exchange for that you're going to get maybe the house or you're going to get more money in maintenance or something, as opposed to saying we're going to take it over this period of time and then maybe the other portions of the property may be distributed differently. Is that true? Right, because I think Walter even in his testimony said, you know, he wanted it – he specifically negotiated to have that particular pension frozen in time because obviously then he would have more from his own pension. So there's a benefit to the bargain on behalf of the wife, if you will. You can argue that. A benefit to not – to inserting a coverture or not having a coverture? I guess I'm not clear on the question. A benefit to the wife in having – taking the insurance or the – what am I trying to say? The retirement as it accrued as of the time of marriage. Did she bargain? Did she negotiate that with respect to the marital settlement agreement? Well, I think that in a marital settlement agreement, like any contract, I think you have to assume that both parties bargained and they had reasons for bargaining for whatever they bargained for. And if I could call the Court's attention to a Supreme Court case that came out after the briefs were filed, Illinois Supreme Court in marriage of Coulter, they were dealing specifically with a marital settlement agreement – I'm sorry, a joint parenting agreement incorporated into a judgment and interpreting it. And to quote the Court, they say, We also note that when divorcing spouses present a signed MSA or JPA to the Court, the document reflects a negotiated agreement. Each party has agreed to certain terms in exchange for the other terms, or terms may be related to each other. And then they go on to say, We cannot know what tradeoffs they made to reach the agreement. So I would suggest that that reasoning should be applied in this case to, again, go to the simple, plain meaning of the language. I'm sorry. So when Judge Zott reexamined this benefit, the quadro, he should have reexamined the whole marital settlement agreement and the whole distribution of the assets of the marital settlement agreement? I don't think so. I think that – The fact that he changed the marital settlement agreement, wouldn't that change – if he changed this benefit, wouldn't it have changed everything else? Well, yeah, presumably. I mean, that's why there's the argument that they should have – Roberta should have had to file a 1401 motion because property settlements are not modifiable in divorce cases. So your bottom line is, look, there was a myriad of things on the table. They entered into a fully negotiated marital settlement agreement. One of the terms was the disposition of benefits as a result of the GAXT benefit package. Right. And so when the trial court came in and said, Well, I'm going to kind of change this from your perspective, that upset the apple cart. Right. And I don't think that – I think it was the trial court's position that they weren't changing. But your position is, when you changed this, you disrupted the entire quid pro quo, or as the Supreme Court said, the tradeoffs that were made to reach that marital settlement agreement. This was just one piece of the pie. Exactly. Getting back to Richardson. Well said, Justice Jordan. You said that this agreement is very clear because it says as it accrued during the marriage. I mean, I look at the language in Richardson, and I know there may have been some before and some during and some after, but still it says half of the benefit as it accrued from the marriage to the divorce. I mean, again, we have a date of marriage, we have a date of divorce. We have the same language as it accrued. And the appellate court in that case said that the marital settlement agreement was silent on the apportionment method. Okay? I mean, it had a thing, you know, set a time for the benefit, but it was silent on the apportionment method. Why is this case different? I mean, was Richardson rightly or wrongly decided? Are you saying it was wrongly decided? Was that not silent on the apportionment method? Was that unambiguous in setting the apportionment method? Because here we have the same exact language. And, again, I would have to fall back on the facts that in that case you had to determine what you were taking 50% of, and that is the portion that the judgment in that case was silent on. There was no such determination that was required in this case. You take 50% as of the date of divorce. So you're in the hunt. You're consistent with hunt is what you're saying. No. I'm saying that hunt would require a coverture fraction. And I'm saying that that's not what these parties negotiated for. What they negotiated for was the specific language in there. And to infer that accrued requires a coverture language, coverture fraction, really goes outside the four corners of the document. And another way to distinguish, although I still think that that factual distinction is what really is most important in this case, but in Richardson there was no quadro entered. So the court had retained not only jurisdiction to force payment, but to calculate. In this case, I think the fact that the parties entered a quadro is evidence that it was not anticipated that the court would retain jurisdiction to determine a calculation. You know, Kehoe seemed to indicate that when there was a quadro that was made part of the dissolution, part of the judgment, it was incorporated in the judgment, that that had an effect on the decision in that case. Now, here, this quadro was not incorporated in the judgment, was it? It was not. It was entered three months later, I think. Okay. And who prepared the quadro? The attorneys for Appley. In Hendry, this court also was called upon to interpret the language of marital settlement agreement, and this court turned to a maxim of construction. I will skip the Latin version, but it says the inclusion of one is the exclusion of the other. So, again, I would argue that on the plain language of the marital settlement agreement, by saying accrued during the marriage necessarily excludes what a coverture fraction would include, which is, you know, an increased benefit over time. There's no language saying that she's entitled to the benefit of Walter's work during the marriage or anything that would be more expansive. And your client did testify, I believe, that he bargained for this, and that's why he stayed working, because he bargained for this early on in order to recoup some of the losses from the divorce or something of that nature? He did. He testified that he continued working, anticipating that he would have the full benefit of his pension. The increased share. Right, increased share after the date of the divorce. One more question, Ms. Marshall. Do you believe that whether or not the benefits vested or did not vest at the time of the disillusion is relevant? I don't think it's relevant. Okay. It is? No. All right. Thank you, counsel. We have time for rebuttal. Mr. Stutler, you may proceed. Good morning, Your Honors. May it please the Court, my name is Michael Stutler. I'm the attorney for the appellee, Roberta Mason. I am presenting the argument asking the Court to affirm the trial court's order modifying the qualified domestic relations order entered November 2004, as it did not match and comply with the terms of the judgment of disillusioned marriage entered three months earlier. How do you look at Richardson? I believe the language in Richardson and the language that was used in this particular case are virtually identical. They're both talking about the benefits accrued during the marriage. And I think that the formula used in Richardson and the formulas that have been used in the past and the decisions by the Court reflect in what divorce attorneys are doing with respect to their judgments of disillusioned marriage. We look at the language and the case law that's been developed by this Court when it talks about marriage abortion, when it talks about benefits accrued during the marriage, when it talks about benefits accrued from the date of the marriage to the date of the divorce. And we use that in determining how we're going to draft our marital assignment agreements, how we're going to draft our judgments of disillusioned marriage. Judges use it in determining how to draft their judgments of disillusioned marriage following a trial. Don't judges use it to determine property distribution awards as well? I believe that the Court, and in this case the parties, determined what the property distribution was going to be, and then they reflect in the language what that's going to be. And the language on the agreement is 50% of the marital portion of the pension, or in the exact words in this were 50% of the benefits accrued during the marriage. During marriage. Those have been interpreted in the exact same fashion, and they've both been interpreted to apply the Hunt formula. Your client's attorneys at the time drafted the, not only, drafted the quadro, correct? Yes, I drafted the quadro, Your Honor. Well, you said that in drafting a marital settlement agreement, you look at the case law and you include this language in theoretically thinking about Richardson and thinking you're going to actually somehow have a Hunt fraction or some type of coverture fraction. But Hunt isn't the only one that can be used. There's a number of different coverture fractions, correct? There are other coverture fractions, which if you review the documents that were presented to the Court, for various reasons why they are incorrect, I have seen other coverture fractions used by the Court where it was explicit in the terms of the judgment of dissolution of marriage that there was another fraction that was supposed to be used. And I would agree that should the parties agree that they would freeze the benefit in the judgment of dissolution of marriage and that was the interpretation of the judgment of dissolution of marriage, then the benefit would be frozen. But that's not what the parties did. The parties elected and the marital settlement agreement was drafted by a different attorney. The marital settlement agreement was drafted in a way that took advantage and used all the language that's been used and interpreted by the case law prior to and interpreted in a fashion similar with Hunt. Well, what if we would interpret it to join through the Hunt method and right after the divorce and the Court took that into consideration and division or the lawyers took that into consideration and division of the marital property, and right after the divorce the husband quits his job? Well, then the difference between using a Hunt formula and using a frozen formula would make no difference. I would note that the frozen formula is not actually what was used in this case. The formula that was used was a spiraling downward formula. But wouldn't it make a difference in the negotiations and the bargaining of the rest of the property distribution? I don't believe that it would. If the husband or the wife, in your case the wife, knew that the quadro included what was accumulated during the marriage, only during the marriage versus during the husband's wife or during the husband's working period, then the marital settlement agreement would have been different. Couldn't you argue that?  And the reason why I say that is because when we look at the Hunt case and we look at the Richardson case, we're imputing and considering the time value of money and the delay in accepting and receiving these benefits. And essentially through the continued employment during that period of time, these benefits grow as a result of factors that are external to it, but considered in and part of that benefit accrued during the marriage. And so for me it would make a difference. I don't think that it would make a substantial difference because it's what's on the table. It's a question of what is the marital portion. The situation that you're suggesting, Your Honor, would essentially change the contents of the marital estate, but would not change the division of the marital estate. Why not? What if I say to you, Counsel, my client, Mrs. So-and-so, will take, you know, the 50% of the pension that's accrued during our marriage, but in light of the fact that I'm going to give up the rest of his pension, I want more for my property distribution. I'm entitled to more because I'm going to cut my ex-husband a break and not hound him throughout his period of work. And then in the end when he retires, I'm going to get a little bit less from his pension. Therefore, I should get a little bit more up front. Again, Your Honor, with the language that you used, 50% of the benefit accrued during the marriage, that is what it is. When we're looking at this division of property at the time of the distribution, we're looking essentially at what the benefit is now. Nobody knows what's going to happen in the future. Will he continue to work? Will he terminate work? Correct. We're looking at those various circumstances. So it has a fixed actuarial value at that time without either side knowing what's going to happen in the matter. And whether he continues to work or not, that actuarial value remains exactly the same. So when I'm looking at it and I put it on the spreadsheet, it's not going to make a difference what he does in the future. The situation now is what's going to make the difference. But his testimony is, you know, I'm going to hope that I live a long life and I'm able to work for a long time. And I'm going to give my ex-wife at the time of the divorce more of our property with the idea that I'm going to get a bigger pension because I'm going to cut the pension, her benefits off at the time of the divorce. I'm going to get a bigger pension. And he testified, I kept working because I wanted the bigger pension to recoup some of the loss, some of the property from the divorce. Why is that unreasonable? I have to say his testimony was a little bit different than that. I believe if I recall he talked about recouping the cost from the divorce and enjoying his job for reasons why he continued, if I recall correctly. But he did, he reaped the benefits of that. His benefit is substantially higher. All that she received essentially was the result of investment return, i.e., the increase as a result of inflation, just as in Hunt and Richardson. I know his benefit is higher, but it would have been even higher if she didn't receive that portion, correct? Agreed, yes. Okay. That's what I'm talking about. But the point, too, is that she received the property settlement then, not someday on the if-come. At the time of the divorce, she took a bigger piece of the property settlement that day, then, right now, not the time-valued concept for pension benefits that she might receive later. But she did delay the receipt of the pension. She didn't receive the pension until, well, his 65th. Right, and my point is in return for that, she received a larger portion of the property, and she received it at the time of the divorce, not later on. The party's bargain, I think, again, I don't believe that the language is ambiguous. I believe that the party's bargain was that she was supposed to receive 50 percent of the benefits accrued during the marriage. I think that's a term that's been used frequently or similar terms have been used frequently in Illinois, and I think we all knew what that meant. And I think that the quadro prepared by an attorney who inadvertently included both a covert refraction and an incorrect date does not comply with the terms of the judgment of dissolution of marriage, and that's the bottom line. The question, I think, there's a couple of different questions and a couple of different alternatives, I think, that are being proposed by opposing counsel here. One is using the frozen or potion going back and setting it based upon a strict dollar amount. But really what they're asking for is a reversal and a going back to what both parties are acknowledging was the incorrect formula, a downward spiral in formula. And that's based upon the application of Section 1401. When I look at this case and I look at what the judge did, the motion that was brought, there is no mention of 1401. And the reason why there's no mention of 1401 is because we are not seeking and the judge did not believe he was modifying the terms of the judgment of dissolution of marriage. That, in fact, is not what was going on. He was interpreting a phrase that was included in the judgment of dissolution of marriage and determining whether or not that was consistent with the term that was contained within the qualified domestic relations order. And then he was implementing the judgment of dissolution of marriage. That's what plaintiff asked the judge to do, and that's what the judge found that he was doing. I would look at the case. But arguably, if the judge was amending the quadro, you're arguing, yes, he was changing it or making it consistent with what the language was at the time. But on the flip side, if he isn't making it consistent and one would find that the earned during the marriage meant just that, earned during the marriage, if he is going to reevaluate that quadro, doesn't he have to reevaluate the whole entire marital settlement? I believe that we're looking a little bit different. Is the quadro the effective document or is the judgment the effective document? Was the quadro part of the marital settlement agreement? No. The qualified domestic relations order is a later entered document to enforce and implement the judgment of dissolution of marriage. Where there's a conflict between the judgment of dissolution of marriage and the quadro, the quadro must fall. It's similar in nature to other… Can you look at the quadro to at least see the intent of the parties? A quadro that was not entered in some of these cases 7 years or 12 years later, but a quadro that was entered less than 3 months after the fact that your client testified that she saw before the entry of the judgment, that was prepared by her attorneys, can't we look at that as shedding light on the intent of a marital apportionment or the apportionment of the benefit that's outlined? I suppose in some cases where the evidence was a little bit clearer, that could be the case. I don't think that's the case here. It wasn't entered at the same time. It wasn't incorporated into the judgment of dissolution of marriage. And if you look at both parties' testimony in their depositions, the manner in which this proceeded before the trial court was a little unusual. But if you look at both parties' testimony in their depositions, there was no meeting of minds as to what this qualified domestic relations order meant as its enforcement of the judgment of dissolution of marriage. Even the defendant, I think, acknowledges that the quadro is not what the judgment means. I'm a little confused by your argument is that the language in the marital settlement agreement is unambiguous to include the Hunt formula based on applying case law. Is that what we're really looking at? It's an unambiguous clause based upon the case law, and we're there to interpret it as absolutely mandating based upon that language in there that Hunt applies. Without additional statements by the parties where in a phrase included in a judgment of dissolution of marriage, whether directed by an attorney or whether by a judge, the court should be interpreting that phrase consistent and consistent with prior case law. So I would say that absent an indication by the parties of some other coverture fraction that if you're dividing 50% of the marital portion of the pension, and that's all you put in your MSA or your judgment, or if you're dividing the portion accrued during the marriage or the portion accrued from the time of the marriage to the time of entry of the divorce judgment, all terms which are very similar in nature, you're looking back and relying on what the appellate court's opinions have been in the past in determining what exactly that means. And I think it's correct for the court later on when interpreting that to look at those opinions and determine what that language means. Well, how about the Wink case? The Wink case seemed to have more specific language than we have here, and they tried to raise the Hunt method. And the court said, the reviewing court, I think it was the third appellate district said, no, that was not ambiguous. The language was not ambiguous, and what the parties meant is what the parties meant. And I think that the Wink case is consistent with the case here. You're asking us to say, oh, other courts interpreted this language to mean this, as opposed to looking at the unambiguous language and determining what the meaning is. How are we supposed to ignore cases that are contrary to what you're saying? Can you distinguish Wink from this case? I believe I can, Your Honor, and if I may refer to the argument regarding the Wink on team. I think the language was pretty – certainly to me could be interpreted to be ambiguous, but the court said no. Well, in this case, both parties claimed that the language was unambiguous, but that's the manner in which it went before the trial court. Correct, but you think it's unambiguous for a different reason than she thinks it's unambiguous. Well, I think it's unambiguous because we have a history of case law preceding us that tells us what it means. If it's unambiguous in the way that appellant is proposing, I don't see any history of case law interpreting it consistent with that. And I – plus there's two different propositions with respect to the language and what it means. As far as whether it's a frozen formula or whether it should be a – go back under Section 141 and a downward spiraling formula. You mean the downward spiraling formula as it relates to how the quadro was first entered? How the quadro was first entered. You both – you all agree that that was an error, correct? I believe so, but they're asking for the court to – they asked the trial court, and I believe they're asking here for that quadro to be re-implemented. I could be incorrect in what – based upon the oral arguments here today, but that was my understanding of their position. So how is the language in Wink different, or how is it that the Third Appellate District interpreted the language in Wink to be unambiguous and not consistent with the HUD? You know, I don't have the Wink case directly in front of me at the moment. I would have to look at the language in the Wink case and see how explicit the terms were contained in the judgment of dissolution of marriage versus what was used here. Where there is an explicit provision for the manner of division, like Kehoe, one of the most recent cases cited where the quadro was incorporated, then you have a specifically – a specific formula provided, and in that case, the judgment controls. And I would say the same applies here. There was many – there were many things that are left when attorneys or the court says 50 percent of the marital portion, 50 percent of the benefits accrued during the marriage. There's a lot that's left out there. What do you do with – what's the coverture fraction? What exactly does that mean? What do you do with the pre-retirement survivor annuities? What about taxation? What about if there's an overpayment, underpayment? We have these qualified domestic relations orders that implement these and flesh out those terms. The question is, is when the court puts into place that qualified domestic relations order, is it limited to strictly just the language that is contained in the judgment of dissolution of marriage, or is it supposed to interpret? I would say if you look at Hunt, if you look at Hall, if you look at any of the qualified domestic relations order cases where it's disputed, in each and every case, it would have been easy enough for the trial court and for the appellate court to say, it says this, write a quadro that says just that, and hand it over to the administrator, and we'll see what happens. That's not what's going on. That's not the case law. The case law is that the quadro is to implement, and therefore the court is going to look at what this phrase means. And I think when you look at this phrase in case law history, I think it has one unambiguous meaning in its usage. Do you agree that the quadro, though, the way that was written, forgetting the spiraling downward stuff, but the way the rest of it was written was in error where it said accrued under the plan as of a specific date. Do you believe that that was in error? The coverture fraction formula paragraph was in error, yes. The remainder of the quadro equity remains essentially unchanged. Was that part of the coverture fraction paragraph where it said that I'd have to grab my copy of that again? So it assigned the petitioner 50% of the merit portion of accrued benefit under the plan as of August 10, 2004. Was that in error? Yes, that's in error, yes. That's in error. Because if you read that, I mean, the plan administrator read that to be a fixed time, fixed benefit, correct? No. Because the next sentence thereafter applies a coverture fraction to that. So it fixes the amount and then it downward spirals the longer that he works there. But it fixed that amount and then went down instead of fixing it and staying the same or fixing it and going up. Fixing it and going up would be the hunt fraction, correct? If we totally fixed it, that would be just the fixed portion. To change the coverture fraction that was originally in there to consistent with the hunt, you would change the language that says as of the date of divorce to the as of the date of beginning benefits. And that would be the sole change that would change it to a hunt formula, yes. Does that answer your question, Your Honor? So then this case is not like Kehoe or it is like Kehoe? This case is not like Kehoe in that the judgment of desolation of merits does not incorporate the qualified domestic relations order and the cruel formula or the apportionment formula is left unanswered, much like Richardson and much like Hunt. But it would be a specific formula, correct, in Kehoe? Kehoe actually was a qualified domestic relations order that was entered when in fact it should have been a quildro that should have been entered. So because that quadro was incorporated into the terms of the judgment of desolation of merits, when a later quildro was entered, the court determined that that quildro needed to comport to the terms of the quadro. I'm sorry, Your Honor. That's okay. Great counseling. Thank you very much. Thank you, Your Honor. Ms. Marshall, you may proceed. Thank you. Just briefly, I would like to point out that there's no way you can reach the conclusion that Applee is asking you to reach without going outside the four corners of the document. You can copy the language of the judgment and paste it into the quadro, and that will implement the intent of the parties. Unlike in Richardson, where additional information was needed, that's not the case. You can just copy and paste it, and the quadro will implement the intent of the parties. And that's what we're asking the court to do. There is no dispute that as the quadro read, you know, creating this downward spiraling situation, that wasn't the intent of the party, that there is an error. But the remedy to that error is taking the exact language from the judgment and putting it in the quadro. Which is what the quadro did, but then it went on with the coverture fraction. Right. I mean, the part I was reading to counsel, accrued benefit under the plan as of August 10, 2004. Right. So you're not, are you asking us to reimplement the quadro with the spiraling downward? Well, I think that goes to the arguments of latches and the waiver of errors, which I really didn't plan to get into unless the court has questions about that. If we don't go along with your argument on latches and the waiver, then what are you asking us to do? Then I think the modified quadro as it stands is incorrect. And to implement the intent of the parties, a quadro should be entered using the exact language of the judgment and not including a coverture fraction. And I don't have anything further. No. Thank you, counsel. Thank you. All right. We will take your case under advisement. Thank counsel for the arguments. And we will take a very short recess.